IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action |
| | ) | No. 07-03096-01-CR-S-RED |
| KARLIN KELLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. This matter comes before the Court on defendant's Motion to Suppress Evidence and Motion to Suppress Statements. The government has responded.

Defendant asserts that evidence and statements seized as a result of a residential search should be suppressed. A hearing was held before the undersigned on February 8, 2008. Defendant was represented by counsel, Adam Woody, and the government was represented by Assistant United States Attorney James Kelleher.

The first witness for the government was Officer Jim Stanley with the Greene County Sheriff's Department. He was investigating a string of burglaries in March of 200, including the theft of firearms. In the course of the investigation, Jay Little and Todd Gerhardt were arrested in connection with these burglaries. As a result of questioning of the two regarding the whereabouts of some of the property, the officers found out that defendant was in possession of several of the stolen firearms. Jay Little called defendant's residence and talked to his sister, Tanya Little. Once

1

the officer got on the telephone and spoke to Ms. Little, he could hear a male voice in the background say something like, "Am I going to jail?" [Tr. 4]. The officer told her to tell the male, whom he assumed to be defendant, that if he cooperated and allowed the officer to come and get the firearms, he wouldn't be going to jail that night. The male in the background said to "tell him come on out and get them." [Id.].

Officer Stanley testified that he arrived on the scene, and met Tanya Little in the driveway of the residence. She was cooperative and told the officers that they could come inside with her. He went inside the residence, where defendant was sitting at the kitchen table. The officer told defendant that he was there to get the firearms. He then went over the Consent to Search Form with defendant, who filled it out and signed his name. The officer also asked defendant if he and Ms. Little would come up to the Sheriff's Department the following Tuesday for an interview. He never placed defendant in custody and did not question him at any time on March 26, 2005. Defendant told him that he knew where the firearms were, and took the officer out to a shed on the property, opened the door, and pointed to the guns. The officer observed two plastic gun boxes and a video recorder, which he photographed and then collected as evidence. The officer stated that he never threatened anyone and specifically made no threats regarding the custody of any children.

On March 29th, defendant met with him for a formal interview. Defendant signed the wavier of rights form after the officer read him his Miranda rights. Defendant indicated he would waive his rights about the stolen firearms and other property. He signed and initialed the form regarding his rights and the waiver of them. Defendant talked to the officer about the stolen firearms and other property. He answered questions, and made inculpatory statements. Again, Officer Stanley testified that he made no threats. He also interviewed Ms. Little and she waived her rights, too. She

2

made inculpatory statements, also. He did not make any threats towards her, and specifically did not make threats about her children.

On cross examination, Officer Stanley acknowledged that he did not get a search warrant in this case. He testified that Jay Little had implicated defendant in a possible crime. He asked Mr. Little to call defendant's residence. The officer could tell that he was having a hard time convincing the person on the phone what he was asking for. Officer Stanley then got on the telephone, and asked to whom he was speaking. The woman identified herself as Tanya Little. The officer testified that he had not investigated either defendant nor Ms. Little, and knew nothing about them. When he heard the male in the background say something about going to jail, the officer said he told Tanya he didn't want anyone to get hurt. He just wanted to come out and get the firearms. He denied saying he didn't want "another Waco." [Tr. 12]. He also denied saying that he didn't want somebody else raising their children. The officer opined that he didn't have any reason to say any of that. He stated that when he was talking to Ms. Little on the phone, he told her that if they cooperated, defendant would not go to jail that night. Officer Stanley acknowledged that two or three other officers went with him to the residence, in separate cars, so he thought there were four officers there. No guns were drawn. Tanya met them in the driveway, and invited them in. Officer Stanley said he wanted a peaceful resolution, and did not want anyone getting hurt. He denied that he ever said he could get a warrant if she didn't consent, or that he could kick the door in, or anything about Waco.

On redirect examination, the officer testified that nothing was actually seized from inside the house. The weapons were all recovered from a shed on the property. Before the search of the shed was conducted, both defendant and Tanya Little had signed consent-to-search forms.

3

Defendant called Tanya Little on his behalf. She stated that defendant is the father of her three young children. On the night in question, her brother called her on the telephone, and told her that he had some guns at her house. He said that if she didn't give them back to him, the police were going to put him in prison. At that point, she didn't know anything about the guns. Then, he put the officer on the phone. The officer asked her if he could come out to the house with a warrant for her and defendant to sign so they could search the house. At the time, she and defendant were in a car about eight or nine miles away from the house. She figured that the officer was calling from the jail because she knew her brother had been arrested. When Officer Stanley asked about coming out to the house, she did not have a problem with that. She was, however, afraid about her children, because the officer "threatened to take my kids from me if I didn't let him come out, and he threatened to – his exact words were 'If I didn't let him come out willingly, then he would get Task Force' and then he paused and said, 'And tell Mr. Kelley we don't want another Waco,' which scared me very bad." [Tr. 18-19]. This was said about three minutes into the conversation. She thought Officer Stanley was trying to scare her; he said "he would hate to see somebody else raise my kids." [Tr. 19]. Defendant was listening while she was on the phone, and she was telling him what the officer was saying. It did scare her. She said it was her house, too, and he could come out because she didn't want anything to happen to her children. She knew what happened at Waco, and this really scared her. Officer Stanley asked her to meet him in the driveway, and she said that would be fine. She saw three cars and officers pull up. That number startled her. She was polite after she saw all the cars and officers. Ms. Little testified that she told the officers they could come in, and they followed her inside. Once they got inside the house, no one interviewed her. Officer Stanley told defendant that they had a warrant for him to sign to be able to search, and needed her

4

to witness it.

On cross examination, Ms. Little testified when her brother called her about the guns, she was not familiar with them. She found out what they had brought to the house after the fact. Ms. Little testified that she had no problem with law enforcement officers coming to the house to recover the guns, and that was true from the beginning. She didn't feel that the officer needed to threaten her, and this scared her, but she would have let them come out anyway. Regardless of whatever threats had been made, she would have let them come out and search. She did state that if defendant agreed, she would also agree because it was his house, too. She reiterated that Officer Stanley specifically told her to tell defendant that they didn't want another Waco. She admitted that she voluntarily invited them out to the house for the search, after the officer said that. She would have agreed, however, regardless because she didn't feel she had anything to hide. She admitted that she signed the form, entitled "Consent to Search," as a witness. It was her testimony that Officer Stanley told them it was just a search warrant for the house, and not for any of the other buildings or outlying land. She did not read it before she signed it.

On redirect examination, she testified that defendant heard about Waco and about the threats to the children through her, as she heard this on the phone.

On recross examination, Ms. Little testified that as far as she knew, Officer Stanley had never met her or defendant. She did not tell him that she had children.

Jay Little also testified on defendant's behalf. He is Tanya's brother, and has known defendant for ten or eleven years. He was arrested for burglary by the Greene County Sheriff's Department, and was being questioned by Officer Stanley. The officer asked him to call his sister. Mr. Little did so, and told her that the police wanted the guns and knew they were out there. Then

5

Officer Stanley spoke to his sister. The officer told her that he wanted to come get the weapons, and that he knew they were there. He said if they couldn't come out and search the property or house, they would come out and it would end up being another Waco. The officer also said some other things, but Mr. Little stated that he wasn't paying attention.

On cross examination, Mr. Little testified that when he called his sister, he told her that the officer needed the guns. He said she knew he had left guns there, but didn't know they were stolen. He let her know they were there when he took them out to the property and put them up. What the officer said was something to the effect that if he couldn't go and search their house with their permission, it would end up being another Waco, TX. It sounded like a threat to him. He wasn't paying attention after that.

Defendant contends that the entry into his residence was involuntary, coerced, without proper warrant, and was gained by threat against Tanya Little that she would lose custody of her children to state authorities. He also contends that subsequent statements he made were likewise coerced, involuntary, and were the direct and approximate result of law enforcement officers making threats against both defendant and Tanya Little regarding the loss of custody of their minor children.

The Court notes, as the government has also observed, that the cases cited by defendant are from other jurisdictions or are not relevant to the facts of this case. In applying Eighth Circuit law, the Court has relied on a number of factors to determine whether consent to search is voluntary. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Some of the factors relating to the person giving consent include age, general intelligence and education, prior experience with law enforcement, and whether he or she was under the influence of drugs or alcohol. See United States v. Mancias, 350 F.3d 800, 805 (8th Cir. 2003) (internal citations omitted). Conduct of law

6

enforcement to be considered includes the length of the detention, whether there was physical intimidation, if the defendant was in custody or under arrest, if the police made promises or misrepresentations, if the interrogation was in a public place, and whether the accused objected to the search or stood by silently. Id.

Regarding the issue of consent to search, Officer Stanley testified that Ms. Little gave verbal consent to search the residence. Additionally, defendant gave written consent, and signed the Consent to Search form, which was witnessed by Ms. Little. There has been no challenge, moreover, to the fact that defendant signed the form. She denied reading the form, and contended that the officer told her it was a search warrant. The Court has reviewed the form in question, which reads, at the top, "Consent to Search," and then simply states that defendant was informed of his right not to have a search made of his house and authorized Officer Stanley to conduct a complete search. Ms. Little's testimony that she thought this was a search warrant is simply unconvincing.

According to Ms. Little's own testimony, she would have given consent to search regardless of what Officer Stanley said to her on the phone. She testified that Officer Stanley threatened her with losing custody of her children, and stated that he didn't want the situation to become "another Waco." It was her testimony, however, that although this scared her, she would have allowed the search to occur, regardless. Ms. Little testified that she had no problem with law enforcement officers coming to the house to recover the guns, and that was true from the beginning. She didn't believe it was necessary to scare her or threaten her, because she had nothing to hide, and she would have let them come out anyway. Ms. Little also admitted that she voluntarily invited them out to the house for the search.

Officer Stanley denied making those statements. Officer Stanley also testified that he didn't

7

know anything about defendant or Ms. Little, including the fact that they had children. Interestingly, Ms. Little testified that she didn't tell the officer that she had children or that they were at the residence. Therefore, her comments about the officer threatening her with the loss of custody of her children are highly incredible. Both of the Littles' testimony about the officer making comments about Waco seem suspect as well, but all of their accusations of being threatened are negated by the fact that Ms. Little clearly testified that she would have agreed to the search in any event. The Court notes that there was nothing about her testimony to suggest that Ms. Little was in any manner impaired and lacked the ability to voluntarily consent. It is also noteworthy that defendant led Officer Stanley out to the shed where the guns were located. There was no evidence that he was not willing to do this or that he attempted at any time to curtail the search or withdraw his consent. The fact that there were several officers and cars at the scene is clearly not enough, without more, to suggest that the presence or conduct of law enforcement was coercive.

Accordingly, based on the credible testimony adduced at the hearing, the Court finds that the Motion to Suppress Evidence should be denied.

For the reasons stated herein, plus the fact that defendant signed a <u>Miranda</u> form, waiving his rights, the Court also concludes that the Motion to Suppress Statements should be denied. There was no evidence adduced at the hearing to suggest that subsequent statements made by defendant were not given voluntarily.

Accordingly, it must be recommended that defendant's Motion to Suppress Evidence and Motion to Suppress Statements be denied.

For the foregoing reasons, it will be

RECOMMENDED that defendant's Motion to Suppress Evidence and Motion to Suppress

Statements be denied.

                                /s/ James C. England
                                JAMES C. ENGLAND, CHIEF
                                UNITED STATES MAGISTRATE JUDGE

DATE:   February 21, 2008